UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK McLEOD,

      Plaintiff,

vs.                                                                          Case No. 04-73202
                                                                             HON. GEORGE CARAM STEEH

CITY OF MELVINDALE, DAN CADEZ,
JOHN F. DIFATTA, CHRISTOPHER
BARBB, PAUL ALLEN, BRADLEY KROPIK,
GUY MORABITO, JOHN BAJOREK,
KEITH GUYOT, NORMAN WELLMAN,
DAVID MANEES, GARY BOWERMAN,
JOHN SABO, JOSEPH MILLER,
ROLOANDA HINOJOSA, ELLIS SLAUGHTER,
AND OTHER POLICE OFFICERS AND JOHN DOES
(Individually and in their official capacities)

      Defendants.

_____/

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

     Plaintiff Mark McLeod is a resident of Melvindale, Michigan and alleges that

defendants deprived him of property improperly seized from his residence during a drug

raid.  A five count complaint[1] was originally filed in state court on May 14, 2004 and

subsequently removed to federal court by defendants.  Defendants move for summary

judgment on all counts.  In his brief and at oral argument on August 8, 2005, plaintiff

---

     [1]**Count One** alleges a violation of federal civil rights actionable under 42 U.S.C. 1983.
**Count Two** alleges defendants conspired to violate plaintiff's federal civil rights; **Count Three**
alleges numerous state law claims including false arrest, false imprisonment, malicious prosecution,
conversion, abuse of process, and trespass; **Count Four** alleges violations of rights guaranteed
under the Michigan Constitution such as deprivation of due process and protection against
unreasonable searches; **Count Five** alleges that defendants conspired in each allegation in
violation of common law.

1

conceded summary judgment on all counts of the complaint as to defendant City of Melvindale and conceded counts 2, 3, 4, and 5 of the complaint as to the individual police officers.  Therefore, defendants' motion for summary judgment is hereby GRANTED for all claims except the Fourth, Fifth, and Fourteenth Amendment allegations (count 1) against the individual police officers.

As to the remaining claims, plaintiff first alleges that defendants violated his right to be free from unreasonable searches and seizures in violation of the Fourth and Fourteenth Amendments by exceeding the scope of the search warrant when they took personal property unrelated to drug activity and not evidence of a crime.  Plaintiff also alleges that his property was unlawfully seized from him in violation of the Fourth Amendment when defendants refused to return his property after a court ordered them to do so.  Finally, plaintiff alleges that the actions of the defendants in not following the court order deprived plaintiff of his property without due process of law in violation of the Fifth and Fourteenth Amendments.  Plaintiff brings these violations pursuant to 42 U.S.C. §1983.  For the following reasons, these claims are dismissed and summary judgment in favor of defendants is GRANTED.

## FACTUAL BACKGROUND

Corporal Cadez, head of the Vice and Narcotics Unit, received a tip from a confidential informant that plaintiff was selling drugs from his home in Melvindale**.**  Cadez investigated the tip and learned that plaintiff had been convicted on three previous occasions for drug related activities.  From May 2000 until October 10, 2000, Cadez performed surveillance on the house and observed frequent visitors stopping for only brief periods of time.  In Cadez's experience, this is consistent with drug and/or

2

narcotics activity.  In addition, Cadez noted that plaintiff did not seem to be gainfully employed citing the fact that he was almost always at home.  Cadez then performed a "trash pull," which tested positive for the presence of marijuana, marijuana residue, and marijuana seeds and stems.  Based on this information, a search warrant was authorized on October 11, 2000.

The search warrant authorized the police to: "seize, secure, tabulate and make return according to law the following property and things: All Marijuana, Cocaine and suspected controlled substances, all monies, computers, computer programs and software, books, tally sheets, record and firearms used in connection with the described activities, all evidence of ownership, occupancy, possession control of the premises."

The Melvindale Police Department, under the supervision of Deputy Chief of Police Barbb, executed the search warrant on October 11, 2000.  The police found various baggies containing white powder, scales, $4,689.00 in currency, marijuana residue, and six firearms from a basement safe.  In addition, the police found a tax return indicating a salary of about $9000/year that led them to believe that plaintiff did not have a viable means of support.  Based on these records and the presence of illegal narcotics, the officers seized the property at the location pursuant to Michigan's drug forfeiture statute MCLA 333.7521.  In addition to the incriminating objects, the officers seized two automobiles, two motorcycles, plaintiff's bank accounts, jewelry, historical coins, electronics, tools, a lawn mower, chainsaw, fan, and plaintiff's BBQ, among other things.

Plaintiff expressed surprise that any drugs were found, indicating the alleged drugs did not belong to him.  While the police argue that they seized the personal

3

property because it may have been received in exchange for drugs, plaintiff alleges he
provided them with proper documentation legitimizing his ownership.  Plaintiff contends
that the monetary assets frozen by the police are legitimized based on his income from
work, savings, profits from the sale of motorcycles built by himself, sale of real estate,
and a trust inheritance.

On January 8, 2001, the state of Michigan brought a formal complaint for a
judgment of forfeiture on the seized property.  The prosecutor included the personal
items because they were believed to be "furnished or intended to be furnished in
exchange for a controlled substance, or traceable to an exchange for a controlled
substance...or [were] used or intended to be used as a thing of value to facilitate the
violation of the drug laws of [Michigan]."

At some point, plaintiff filed his own lawsuit by submitting a motion for claim and
delivery (the motion is not dated).  Pursuant to this motion, the state court judge issued
a May 17, 2001 order requiring some of the property "immediately released and
returned to Claimant Mark McLeod or his agent(s) without costs of any kind."  This
referred to all personal items seized except: the two automobiles, one of the
motorcycles, three of the five frozen bank accounts,  the $4689 in currency found at the
residence, the coins, the Panosonic TV that housed some of the drugs, all weapons and
fireworks seized at the house, and all illegal drugs and drug paraphernalia.

Plaintiff contends that defendants refused to follow the court order to
"immediately" release the stated items.  Plaintiff's lawyer at the time, Charles Marr,
testified that he telephoned defendants numerous times requesting that the property be
returned.  In addition, plaintiff testified that he also requested on numerous occasions

4

the return of his property, only to be denied.  Defendants contend that the property was always available to him, he just failed to retrieve it.  In support of this, Cadez testified that plaintiff picked up the motorcycle mentioned immediately after the May 17, 2001 court order.  According to Cadez, plaintiff indicated at this time that he needed to make arrangements to pick up the remaining items.  Despite Cadez's apparent efforts to make himself available to accommodate plaintiff's attempt to retrieve his property, the property was never picked up.

Soon after the May 17, 2001 conclusion of the claim and delivery action, the State's forfeiture hearing also concluded and on May 30, 2001 the court issued the final Consent Judgment of Forfeiture.  The agreement stated that the currency, television set, all weapons and fireworks, and all drug related items would be forfeited while the remaining motorcycle, two automobiles, three bank accounts, coins, and "any remaining non-contraband items seized from claimant's residence" shall be returned to the claimant.  Plaintiff was ordered to pay all storage and towing fees for the two automobiles, but was not required to pay any fees for any other item.  Plaintiff claims that despite the court order requiring the police department to turn over his property, they refused to do so in a timely fashion.

Apart from the motorcycle that defendants indicate was returned on May 17, 2001, the record is silent as to the exact timing that any given item was returned. However, at his deposition plaintiff testified that he received all non-forfeited property by the beginning of July, 2001.

As a result of the failure to return the property, plaintiff alleges considerable economic damage and inconvenience, including temporary loss of employment (no

5

transportation) and legal fees of over $15,000.  Plaintiff was eventually charged for being a felon in possession of firearms, plead guilty and sentenced to three years in prison beginning late July, 2001.  After completing his sentence, plaintiff filed this lawsuit. No charges relating to illegal narcotics were ever brought against him.

<u>STANDARD FOR SUMMARY JUDGMENT</u>

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  <u>See</u> <u>Redding v. St. Eward</u>, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>see</u> <u>also</u> <u>Cox v. Kentucky Dept. of Transp.</u>, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" <u>Amway Distributors Benefits Ass'n v. Northfield Ins. Co.</u>, 323 F.3d 386, 390 (6th Cir. 2003) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Redding</u>, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly

6

supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original); <u>see</u> <u>also</u> <u>National Satellite Sports, Inc. v. Eliadis, Inc.</u>, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 270 (1968); <u>see</u> <u>also</u> <u>McLean v. 988011 Ontario, Ltd.</u>, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. <u>Anderson</u>, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. <u>McLean</u>, 224 F.3d at 800 (citing <u>Anderson</u>, 477 U.S. at 252).

<u>ARGUMENT</u>

The only argument set forth by defendants in support of summary judgment is that they are entitled to qualified immunity on all counts. Defendants rely on <u>Ahlers v. Schebil</u>, 966 F. Supp. 518 (E.D. Mich. 1997) affirmed 188 F.3d 365 (6th Cir. 1999), and <u>Nicholson v. Kent County Sheriffs Department</u>, 839 F. Supp. 508 (WD Mich, 1993).

In <u>Ahlers</u>, the court recognized that "a government employee will be shielded from liability so long as the employee acted under the objectively reasonable belief his or her actions were lawful . . . . A successful 1983 claimant must establish that the defendant acted knowingly or intentionally to violate his or her constitutional rights . . . such that mere negligence or recklessness is insufficient." <u>Ahlers</u>, 188 F.3d at 372-73.

7

The court also applied a two part test: a plaintiff must first show that the officer's conduct violated a clearly established federal, constitutional, or statutory right and that the a reasonable official in the defendant officer's position would have know of this right. Ahlers, 966 F. Supp. at 528.  In Nicholson, the district court added that when "officers of reasonable competence could disagree on this issue, immunity should be recognized. Nicholson, 839 F. Supp. at 513( citing Malley v. Briggs, 475 US 335, 341 (1986)).


ANALYSIS

In the Sixth Circuit, when analyzing whether or not to grant qualified immunity, a court must use a three step inquiry: 1) determine if a constitutional violation occurred when using the facts in a light most favorable to plaintiff; 2) determine whether the violation involved a clearly established constitutional right of which a reasonable person would have known; and 3) determine if plaintiff has offered sufficient evidence to show the official acted in an objectively unreasonable manner in light of the clearly established constitutional right.[2]  If plaintiff cannot show each of these elements, qualified immunity must be granted.  Sample v. Bailey, 409 F.3d 689, 695-696 (6th Cir. 2005); citing Feathers v. Aey, 319 F.3d 843 (6th Cir. 2003).  A denial [or granting] of qualified immunity is an issue of law.  Id.

A. Exceeding the Scope of the Search Warrant

Plaintiff alleges that the police seized more than the warrant authorized in

---

[2]The Supreme Court issued a two-step inquiry in Saucier v. Katz, 533 U.S. 194 (2001), but the Sixth Circuit's 2005 holding in Sample indicates that its three-step inquiry is consistent with the two-step inquiry set out by the Supreme Court.

8

violation of the Fourth Amendment.  The Fourth Amendment states that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."  A valid search warrant can become an invalid search if officers flagrantly disregard the limitations of the warrant.  Brindley v. Best, 192 F.3d 525, 531 (6th Cir. 1999).  Such action violates the Fourth Amendment...[and] the test is whether the officer's actions were reasonable.  Id.

There appears to be no dispute of any material fact on this issue.  It seems clear that the officers operated on what they believed to be a valid warrant, both parties agree that the items were seized, and presumably, both parties would agree that items such as a BBQ and a lawn mower are evidence of ownership, occupancy, possession, or control of a premises.

The police officers' actions were reasonable under the circumstances.  The officers began the search with a valid warrant to search for drugs based on evidence of past drug convictions, the presence of drugs in the trash, and a confidential informant.  The police found baggies with both suspected drugs and drug residue.  During a search for illegal drugs, any of the contested items could potentially be identified as critical evidence tying the plaintiff to the alleged crime.  At the time of a search, it was unknown to the police officers whether a television set, a Rolex watch, or even a lawn mower would eventually become this crucial evidence.  For this reason, taking this personal property was reasonable where the search warrant clearly indicated that evidence of ownership, occupancy, or possession of the premises could be seized.   In addition, the police officers acted according to the reasonable belief that M.C.L. 333.7521 authorized

9

the seizure of  "anything of value that is furnished in exchange for a controlled

substance, an imitation controlled substance, or other drug in violation of this article."

    While the police seized an extensive number of items, their actions were

reasonable, and therefore not a violation of the Fourth Amendment.  Because there is

no violation of a constitutionally guaranteed right, defendants cannot be deprived of

qualified immunity.    For this reason, summary judgment in favor of defendants is

hereby GRANTED on the claim that the initial seizure of plaintiff's personal property

violated the Fourth Amendment.

B. Failure to Return Seized Property - Fourth Amendment

     Plaintiff relies on two unpublished Sixth Circuit cases as authority for the notion

that failing to return property is a violation of the Fourth Amendment:  Eaton v. Farmer,

23 F.3d 406 (6th Cir. 1994) and Bush v. Banks, 103 F.3d 128 (6th Cir. 1996).  During oral

arguments, the court presented each attorney with a case not submitted by either party,

Fox v. Van Oosterum, 176 F.3d 342 (6th Cir. 1999).   Plaintiff's counsel acknowledged

that he was aware of the case's holding and conceded that, despite differing facts, it

was controlling precedent.  In Fox, the Sixth Circuit declined to accept the rationale of

the two unpublished cases, relied on by plaintiff.

    The Supreme Court established that one of the purposes of the prohibition on

unreasonable seizures of property is the protection of the individual's property rights in

the seized items. Fox, 176 F.3d at 350; citing Soldal v. Cook County, Ill., 506 U.S. 56,

62-63 (1992).  A seizure exists for purposes of the Fourth Amendment when there is a

meaningful interference with an individual's possessory interests in the property. Id.

More specifically, "the Fourth Amendment protects an individual's interest in ***retaining***

possession of property but not the interest in ***regaining*** possession of property." <u>Id</u>. at 351. (Emphasis added).  Simply put, a person cannot seize what they already have possession of.  The court holding is limited to the situation present in <u>Fox</u> which is "an initial, lawful seizure of a piece of property followed by a refusal to return that property." <u>Id</u>.

The factual circumstances in <u>Fox</u> and the present case are similar except that in the case on hand, a court ordered the police to return the property.  This is not enough, however to overcome the Sixth Circuit's clear explanation that the Fourth Amendment does not protect an individual's interest is regaining possession of property.   Therefore, despite any possible factual dispute as to whether defendants withheld plaintiff's property from him, <u>Fox</u> precludes as a matter of law any Fourth Amendment violation. Plaintiff therefore has no legal ground for this claim, and therefore cannot show a constitutional violation.  Without a constitutional violation, plaintiff cannot attack defendants' qualified immunity.  Therefore, summary judgment is hereby GRANTED to defendants for the claim that they unlawfully deprived plaintiff of his property after the court ordered it returned in violation of the Fourth Amendment.

C. <u>Failure to Return Seized Property - Fifth and Fourteenth Amendments</u>

Plaintiff alleged in his complaint that all defendants were responsible for not turning over possession of his property; yet, apart from Corporal Cadez and Deputy Chief Barbb, plaintiff does not mention any other defendant in his support brief.  When asked during oral argument, plaintiff conceded that only Cadez and Barbb were responsible for withholding his property.  Accordingly, summary judgment is GRANTED as to all officers except Cadez and Barbb.

11

As to Defendants Cadez and Barbb, plaintiff bases his Fifth and Fourteenth Amendment claims on the recent case of <u>Armstrong v. City of Melvindale</u>, 2005 LEXIS 8964 (E.D. Mich. May 13, 2005).  The facts of Armstrong are virtually the same as it relates to this issue: the Melvindale Police Department seized personal items, a judge ordered the property returned, and the plaintiff alleges some of the items were not returned pursuant to this order.  The court found that there was a genuine issue of fact as to if defendants returned the property, and therefore summary judgment was not granted.  In addition, the court held that reasonable officers in defendants' position would have known that failing to return property to comply with a court order was unlawful.  <u>Id</u>. at 36-37.

In the present case, the issue of Barbb and Cadez having qualified immunity rests on whether they acted reasonably under the circumstances, as seen in a light most favorable to the plaintiff.  In the first part of the allegation, plaintiff claims that defendants violated the first court order when they refused to return the property.  Even if they did refuse to return the property, this court finds that it was reasonable to do so. The officers knew that there was both a claim and delivery action and a judgment of forfeiture action pending before the same judge.  After the conclusion of the claim and delivery action on May 17, 2001, the forfeiture hearing was still pending.  A reasonable officer may withhold the property because the outstanding forfeiture action still left a question as to the ability of plaintiff to regain possession of his property.  Therefore, any possible violation would have occurred only after the forfeiture hearing judgment on May 30, 2001.  Plaintiff stated that he received his property in the beginning of July, 2001, which means there is a contested period of just over a month.  It is not clear that a delay

12

of a few weeks in returning the property amounts to a constitutional violation even if plaintiff could demonstrate repeated efforts during that period to recover it.  However, as described below, plaintiff has failed to demonstrate such efforts.

Plaintiff's lawyer, Mr. Marr, testified that he telephoned on numerous occasions, without success, requesting his client's property be returned.   This is in addition to the apparent efforts made by plaintiff himself.   Although the court does not question the truth of plaintiff's statements, it does question the sufficiency of his and his attorney's actions.  In Marr's affidavit, he had claimed that plaintiff's property was withheld for about two and a half months.  However, based on plaintiff's own testimony, the time frame is about a month and a half, at best.  Based on this apparent ambiguity, the court requested that Marr submit a supplemental affidavit explaining in detail the exact steps he took on his client's behalf in an effort to regain possession of the property.  Although given nearly three weeks, plaintiff never submitted this explanation.  Left with only the vague statements that he telephoned on numerous occasions, plaintiff has simply not submitted any evidence to establish that he or his attorney contacted either Barbb or Cadez requesting that they return the property during the relevant period following the forfeiture judgment.  For this reason, plaintiff has not submitted any evidence to support his claim and therefore, defendants are entitled to qualified immunity.  Therefore, summary judgment is hereby GRANTED to defendants on the Fifth and Fourteenth Amendment claims.

<u>CONCLUSION</u>

Of the three allegations not conceded by plaintiff from the onset, all are now

13

dismissed and summary judgment is granted to defendants on all counts. Defendants acted reasonably in seizing plaintiff's property, and therefore did not violate the Fourth Amendment's prohibition of unreasonable searches and seizures. Secondly, the Sixth Circuit's holding in <u>Fox</u> precludes as a matter of law any finding of a Fourth Amendment violation as it relates to defendants withholding plaintiff's property after a court order required them to return it. On the third issue, plaintiff concedes summary judgment as to all officers except Barbb and Cadez. Barbb and Cadez are entitled to qualified immunity because plaintiff has failed to provide sufficient evidence that he or his attorney attempted to retrieve his property during the relevant period following the forfeiture judgment. Summary judgment is hereby GRANTED in favor of defendants, and all claims are dismissed.


s/George Caram Steeh                        
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE


Dated:  September 21, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on September 21, 2005, by electronic and/or ordinary mail.

s/Josephine Chaffee                        
Secretary/Deputy Clerk